## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DWAYNE B. SULLIVAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:06-CV-1033-BF |
| | § | ECF |
| HENRY M. PAULSON, JR., Secretary, | § | |
| Department of the Treasury, and | § | |
| MARK W. EVERSON, | § | |
| Commissioner, Internal Revenue Service, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pursuant to the District Court's Order of Reassignment (doc. 12), this is now a consent case before the United States Magistrate Judge Paul D. Stickney.  Before this Court is a motion for summary judgment (doc. 29) filed by Defendants Henry M. Paulson, Jr., Secretary, Department of the Treasury, and Mark W. Everson, Commissioner, Internal Revenue Service (collectively, the "Defendants").  For the reasons stated herein, Defendants' motion for summary judgment is granted.

### I. BACKGROUND

Plaintiff Dwayne B. Sullivan (the "Plaintiff"), an African American male, began working for the Internal Revenue Service ("IRS") in January of 1975 as a GS-4 co-op educational student.  Defs.' Br. at 1; Pl.'s Br. at 1.  After graduating from North Texas University, Plaintiff became a regular revenue agent (GS-7) with the IRS.  Pl.'s Br. at 1.  Since January of 1982, Plaintiff has been a GS-13 Appeals Officer, the position Plaintiff currently holds.  Pl.'s Br. at 2.  As a GS-13 Appeals Officer, Plaintiff resolves tax cases where taxpayers have appealed IRS determinations or filed petitions with the United States Tax Court for redetermination of tax liability.  Defs.' Br. at 2.  In 2005, the IRS announced openings for two GS-14 Appeals Officer positions in Dallas.  Defs.' Br.

at 2; Pl.'s Br. at 2.  Plaintiff applied for these positions and was one of the five individuals to make

the "best qualified" list for these openings.  Defs.' Br. at 2; Pl.'s Br. at 5.  Two Caucasian females

were given the GS-14 positions.  Defs.' Br. at 6.  On June 12, 2006, Plaintiff brought an action

against Defendants under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, alleging that Defendants

failed to promote him based on his age, sex, race, and color.  Pl.'s Compl. at 4.  Defendants filed

their motion for summary judgment on March 2, 2007.

## II. STANDARD OF REVIEW

"[T]he plain language of Rule 56 'mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial.'"  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).  "Plainly, Rule 56 means what it says:

'judgment . . . shall be rendered *forthwith* if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  *Little*, 37

F.3d at 1075 (citing FED. R. CIV. P. 56(c)).  "'Material facts' are 'facts that might affect the outcome

of the suit under the governing law.'"  *Hilton v. Sw. Bell. Tel. Co.*, 936 F.2d 823, 827 (5th Cir. 1991)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A dispute about a material

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  *Id.*

If the nonmovant fails to establish a genuine issue of material fact as to all essential elements

of his claim, the entry of summary judgment is mandated as to that claim.  *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991) (quoting *Celotex Corp.*, 477 U.S. at 322).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Catrett*, 477 U.S. at 322-23.  Therefore, the "moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  *Id*. at 323.

The moving party "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of [Plaintiff's] case."  *Little*, 37 F.3d at 1075 (citing *Catrett*, 477 U.S. at 327; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 477 U.S. at 323 (internal quotation omitted).  However, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."  *Id*.  "On the contrary, Rule 56(c), which refers to 'the affidavits, if any' (emphasis added), suggests the absence of such a requirement.  And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment 'with or without supporting affidavits.'"  *Id*.  "The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should, be granted so long as whatever is

before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

"If the moving party fails to meet this initial burden [of demonstrating the absence of a genuine issue of material fact], the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075. "If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 325). The nonmovant must "by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citing FED. R. CIV. P. 56). A party opposing a summary judgment motion cannot rest on mere conclusory allegations or denials of the opposing party's pleading. FED. R. CIV. P. 56(e). The nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts . . . by unsubstantiated assertions . . . or only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lujan*, 497 U.S. at 871-73; *Hopper v. Frank*, 16 F.3d 92, 92 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1082 (5th Cir. 1994)).

In addition, factual controversies are resolved "in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan*, 497 U.S. at 888). *See also Lujan*, 497 U.S. at 888 (resolving actual disputes of material facts in favor of the nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint. . . .  It will not do to

4

'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege"). "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little*, 37 F.3d at 1076 (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 62 (5th Cir. 1993)).

### III. ANALYSIS

"[E]mployment discrimination claims [are analyzed] under a three-step, burden-shifting framework." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 326 (5th Cir. 1993)). "First, the employee must raise a genuine issue of material fact as to each element of his *prima facie* case." *Id.* "If the plaintiff succeeds, the burden of production shifts to the defendant to rebut the presumption of discrimination created by the *prima facie* case by articulating a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988). "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "Finally, the plaintiff must prove that the defendant's reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated the defendant or by showing the [] defendant's reason is unworthy of credence." *Bienkowski*, 851 F.2d at 1504 (citing *Burdine*, 450 U.S. at 253-56). However, the plaintiff "at all times retains the burden of persuading the fact finder that impermissible discrimination motivated the [non-promotion]." *Jackson v. GTE Directories Serv. Corp.*, 734 F. Supp. 258, 267 (N.D. Tex. 1990) (Fitzwater, J.)

(citing *Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 750 (5th Cir. 1989)).

## A. Age Discrimination

Defendants contend that Plaintiff failed to establish a *prima facie* case of age discrimination. Defs.' Br. at 9.  "A plaintiff proceeding under the ADEA may establish a *prima facie* case of age discrimination through one of three methods: by direct evidence of discriminatory intent; by meeting the *McDonnell*[ *Douglas*] test applicable to Title VII cases; or through statistical proof." *Jackson*, 734 F. Supp. at 267 (citation omitted).  At issue in this case is the *McDonnell Douglas* test.[1]  "In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Supreme Court formulated an evidentiary procedure for cases in which there is no direct evidence of age discrimination.  Although the Court cautioned that this form is not the exclusive method of proceeding . . . it . . . has been generally adapted to the ADEA context." *Bienkowski*, 851 F.2d at 1504.  *See also Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 565 n.11 (5th Cir. 1983) ("We recognize that *McDonnell Douglas, supra*, involves a Title VII action.  However, the analysis of Title VII cases has been applied to ADEA cases given the common purpose of the statutes and their nearly identical substantive provisions.").

According to the Fifth Circuit, "A plaintiff may establish a *prima facie* case of age discrimination with respect to . . . a failure to promote by demonstrating that: 1) he was . . . not

---

1. The dispute over Plaintiff's age discrimination claim is whether Plaintiff has met the fourth step of the *McDonnell Douglas* framework.  Neither party argues that the *McDonnell Douglas* framework is inapplicable in this case, and this Court does not see any reason why it should not be applied.  *See O'Connor v. Consol. Coin Caterers*, 517 U.S. 308, 311 (1996) ("In assessing claims of age discrimination brought under the ADEA, the Fourth Circuit, like others, has applied some variant of the basic evidentiary framework set forth in *McDonnell Douglas*.  We have never had occasion to decide whether that application of the Title VII rule to the ADEA context is correct, but since the parties do not contest that point, we shall assume it.").

promoted . . . ; 2) he was qualified for the position he . . . sought; 3) he was within the protected

class at the time of the . . . failure to promote; and 4) either i) the position . . . sought was filled by

someone outside the protected class; ii) the position he . . . sought was filled by someone younger;

or iii) he was otherwise . . . not promoted because of his age." *Bennett v. Total Minatome Corp.*,

138 F.3d 1053, 1060 (5th Cir. 1998) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th

Cir. 1996)).  In considering such an evidentiary framework, the Supreme Court has stated:

> Because it lacks probative value, the fact that an ADEA plaintiff was replaced by
> someone outside the protected class is not a proper element of the *McDonnell
> Douglas prima facie* case. . . . In our view, [] the proper solution to the problem lies
> not in making an utterly irrelevant factor an element of the *prima facie* case, but
> rather in recognizing that the *prima facie* case requires evidence adequate to create
> an inference that an employment decision was based on a[n] [illegal] discriminatory
> criterion . . . . In the age-discrimination context, such an inference cannot be drawn
> from the replacement of one worker with another worker insignificantly younger.
> Because the ADEA prohibits discrimination on the basis of age and not class
> membership, the fact that a replacement is substantially younger than the plaintiff is
> a far more reliable indicator of age discrimination than is the fact that the plaintiff
> was replaced by someone outside the protected class.

*O'Connor*, 517 U.S. at 312 (internal quotation and citation omitted).  *See also Bienkowski*, 851 F.2d

at 1506 ("Bienkowski contends that to establish his *prima facie* case he need only show that he was

replaced by someone younger than himself, if even by a mite.  The law is not so simplistic. . . .

*Burdine* has been reasonably interpreted to require a plaintiff to show that he was replaced by a

worker sufficiently younger in the context of his employment to permit an inference of age

discrimination. . . . In the present case, Bienkowski is five years older than his replacement and the

replacement was the same age, 54, as the average American security department worker. . . .

Although this fact does not legally preclude the possibility of discrimination against Bienkowski,

. . . it is a close question whether he established a *prima facie* case.").

At issue in this case is step four of the above mentioned evidentiary framework.  The parties

7

are in agreement that Plaintiff has met steps one through three.  Defs.' Br. at 9; Pl.'s Br. at 20.

Defendants argue that Plaintiff does not meet step four because the candidates selected were not

substantially younger than Plaintiff and also because even if Defendants had in fact decided not to

hire Plaintiff because he was closer to retirement than the selectees as Plaintiff alleges, this does not

violate the ADEA.  Defs.' Br. at 9-12.  In his response, Plaintiff points out that he stated at his

deposition that the candidates selected were one and two years younger than Plaintiff at the time of

the selection, but that more of his argument is that he was retirement age.  *See* Pl.'s Br. at 20; Pl.'s

App. at 13.  Plaintiff stated, "I claim that more on retirement discrimination.  I had three and a half

years left to go before I became eligible for retirement.  The other parties were far like at least five,

six, seven, eight years.  I think Nancy might have had eight, and I think LuAnn might have even had

more than that.  Sometimes they won't select you for a job not knowing if you're going to be in the

job that long depending on whether you decide to retire or whether you don't."  *Id*.  Plaintiff argues

that he has met the fourth prong because he "has claimed that he was not selected for promotion

because of his age.  He could retire in a much shorter time than the selectees"  Pl.'s Br. at 21.

Since the selectees were 50 years old and 49 years old whereas Plaintiff was 51 years old at

the time of the promotions at issue, the dispositive issue appears to be whether Plaintiff presented

evidence sufficient to create a fact question as to whether "he was otherwise . . . not promoted

because of his age."  *Bennett*, 138 F.3d at 1060 (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989,

992 (5th Cir. 1996)).  Plaintiff must "by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (citing FED. R. CIV. P. 56).  Plaintiff cannot rest on

mere conclusory allegations.  *See* FED. R. CIV. P. 56(e).  As Defendants point out, Plaintiff's

8

"assertion that the IRS does not promote persons close to retirement age is an opinion, not fact." Defs.' Reply at 2.  Furthermore, as Defendants point out, Plaintiff "offers no summary judgment evidence in support of this contention, nor in support of his allegation that Driver and/or Parker, who are only one and two years younger than Sullivan respectively, were not similarly close to retirement."  *Id.*  In fact, as Defendants point out, Plaintiff does not point to any evidence showing "that the interviewers and selecting official considered his possible retirement at all."  *Id.*  Plaintiff argues that "[b]ecause age is a requirement for retirement at the IRS, Sullivan has met the requirement of the fourth prong of the *prima facie* case of age discrimination.  He has claimed that he was not selected for promotion because of his age.  He could retire in a much shorter time than the selectees." Pl.'s Br. at 21.  Even if Plaintiff had offered summary judgment evidence in support of his contention that the selectees were not similarly close to retirement age, pointing out the fact that Plaintiff is closer to retirement eligibility than the selectees does not demonstrate that Defendants decided not to select Plaintiff for this reason.  It is not sufficient for Plaintiff to merely cite to portions of his deposition where he claims that Defendants do not promote people close to retirement age and that Plaintiff is much closer to retirement eligibility than the candidates selected. *See Lujan*, 497 U.S. at 888 ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value."); Pl.'s Br. at 21.  Plaintiff's conclusory allegations do not demonstrate that he was otherwise not promoted because of his age. Plaintiff has not designated specific facts showing that there is a genuine issue for trial.  "The Plaintiff at all times retains the burden of persuading the fact finder that impermissible

9

discrimination motivated the [non-promotion]." *Jackson*, 734 F. Supp. at 268 (citing *Burns*, 890 F.2d at 750). Plaintiff has not met this burden.

### B. Defendants' Legitimate, Non-Discriminatory Reason

Defendants argue that even if Plaintiff could show a *prima facie* case of age, race or sex discrimination, summary judgment is proper because Defendants have offered a legitimate, non-discriminatory reason for the non-selection of Plaintiff for the GS-14 Appeals Officer positions at issue.[2] Defs.' Br. at 12. Once the plaintiff shows a *prima facie* case of discrimination, the burden shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. "[T]he employer's burden is satisfied if he simply explains what he has done or produc[es] evidence of legitimate nondiscriminatory reasons." *Id.* at 256 (internal quotation and citation omitted). Defendants "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254. Defendants contend that Plaintiff was not selected for one of the GS-14 Appeals Officer positions because he "was only able to 'meet' the case management requirements of a GS-13 Appeals Officer." Defs.' Br. at 12. "Thus, Brian Haley, the selecting official, believed that Sullivan would struggle in the GS-14 position, where the cases are more complex and case management becomes more critical." Defs.' Br. at 12; Haley Am. Decl. at ¶ 18.

Once Defendants articulate a legitimate, nondiscriminatory reason for the non-selection of Plaintiff, Plaintiff "must prove that [Defendants'] reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated [Defendants] or by showing

_____

2. Although Defendants challenge Plaintiff's *prima facie* case of age discrimination, Defendants do not challenge Plaintiff's *prima facie* case of race or sex discrimination. Defs.' Br. at 12.

[that Defendants'] reason is unworthy of credence." *Bienkowski*, 851 F.2d at 1504 (citing *Burdine*, 450 U.S. at 253-56). *See also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1185 (5th Cir. 1997) (The "'inference of discrimination' raised by the *prima facie* case serves *only* to force the defendant to come forward with a legitimate explanation, and once the defendant does so, this inference 'simply drops out of the picture.' . . . The plaintiff retains throughout the ultimate burden of proving that the defendant discriminated against him . . . . The inference of discrimination created by the *prima facie* case is gone. To satisfy the statutory burden, the plaintiff must offer some evidence, whether direct or circumstantial, that permits the jury to infer that the proffered explanation was a pretext for illegal discrimination.") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Whether direct or circumstantial, "the evidence offered to counter the employer's proffered reasons must be substantial." *See Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). Plaintiff challenges Defendants' proffered reason on the following basis: (1) "Defendants have not sufficiently articulated a non-discriminatory reason," (2) "Defendants' shifting reasons show pretext," and (3) "Defendants' reasons are false and thus [show] pretext." Pl.'s Br. at 22-30.

### 1. Insufficient Non-Discriminatory Reason

Plaintiff contends that the "Defendants' different iterations of any alleged reason for not promoting Sullivan fail to meet the requirement that Defendants sufficiently articulated a non-discriminatory reason." Pl.'s Br. at 22. Plaintiff contends that:

> Defendants have provided three different reasons for Sullivan's non-selection for promotion in the Summary Judgment brief: 1) Haley "did not select Sullivan for promotion to a GS-14 position because of concerns regarding Sullivan's case management abilities at the 13 level" (Defs.' Brief, p. 3), 2) Plaintiff "was only able to 'meet' the case management requirements of a GS-13 Appeals Officer" (Defs' Brief, p. 12); 3) Haley "believed that Sullivan would struggle in the GS-14 position, where the cases are more complex and case management becomes more critical" (Defs' Brief, p. 12).

Pl.'s Br. at 21.  These are not three different reasons.  As Defendants point out, Plaintiff takes

Defendants' one articulated reason, namely Haley's concerns about Plaintiff's case management

abilities at the 13 level, and parses it into three different reasons.  *See* Defs.' Reply at 4.  Plaintiff

cites *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) in support of his position that Defendants

have not articulated a nondiscriminatory reason with "sufficient clarity."  Pl.'s Br. at 22.  In *Patrick*,

the Fifth Circuit stated the following:

> If the INS believed-and had verbalized-that Patrick was not "sufficiently suited" to
> fill the SRS position because of her experience, credentials, attitude, or some other
> such articulable characteristic, the agency's reason might have provided enough
> detail to enable Patrick to attempt to show pretext.  In the face of the INS's bald and
> amorphous statement that Patrick simply was "not sufficiently suited," however,
> neither we nor Patrick can identify the kind of evidence needed to demonstrate that
> such a rank generalization is or is not pretexual.

*Patrick*, 394 F.3d at 317.  Defendants verbalized that Haley believed Plaintiff was not sufficiently

suited to fill one of the GS-14 Appeals Officer positions because he "was only able to 'meet' the

case management requirements of a GS-13 Appeals Officer," and "Brian Haley, the selecting

official, believed that Sullivan would struggle in the GS-14 position, where the cases are more

complex and case management becomes more critical."  Defs.' Br. at 12; Haley Am. Decl. at ¶ 18.

Defendants' articulated reason is sufficiently detailed to enable Plaintiff to attempt to show pretext.

Plaintiff also contends that Defendants' alleged reasons for choosing the selectees for the

GS-14 Appeals Officer positions are insufficient.  Pl.'s Br. at 22.  Since this Court finds that

Defendants sufficiently articulated a non-discriminatory reason for the non-selection of Plaintiff, this

Court does not address Plaintiff's argument regarding Defendants' alleged insufficient reasons for

choosing the selectees.  In order to satisfy their burden, Defendants only need to produce evidence

regarding why Plaintiff was rejected or why the selectees were preferred, not both.  *See Burdine*, 450

U.S. at 254-56 ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . . The Court of Appeals has misconstrued the nature of the burden that *McDonnell Douglas* and its progeny place on the defendant. . . . We stated in *Sweeney* that the employer's burden is satisfied if he simply explains what he has done or produc[es] evidence of legitimate nondiscriminatory reasons. . . . It is plain that the Court of Appeals required much more: it placed on the defendant the burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff.") (internal citation and quotation omitted).

### 2. Shifting Reasons Showing Pretext

Next, Plaintiff argues that Defendants' setting forth over time different and shifting reasons for not promoting Plaintiff shows pretext.  Pl.'s Br. at 23.  Initially, Plaintiff contends that on May 20, 2005, one of the two interviewers, Leonard Horton, told Plaintiff that Plaintiff was not promoted because the other interviewer, Sue Cody, did not like Plaintiff's answer to one of the interview questions.  *Id*.; Pl.'s App. at 20.  Plaintiff explains in his response brief that the answer that concerned Cody dealt with "a follow up question regarding what case management skills he currently used that would enable him to efficiently manage a Grade 14 inventory.  According to Horton, Sullivan gave a perfect answer (App. 67, Horton depo. p. 120, lines 3-6).  But to a follow up question from Cody whether he was utilizing such skills now, Sullivan allegedly answered he was not (App. 102, Cody depo. p. 132, line 25-133, line 10)."  Pl.'s Br. at 10.  Next, Plaintiff contends that after Plaintiff "filed an EEO complaint the Defendants alleged that management's reason for not promoting him was an alleged case management problem."  Pl.'s Br. at 23.  Third,

Plaintiff contends that "[i]n his EEO affidavit Haley repeatedly stated that his selection decision was solely based on the interview panel's recommendation.  He did not review the applications, the rankings, or the resumes."[3]  *Id*. at 23.  Plaintiff's last argument contends that "in the Summary Judgment Brief Defendants state several differing variations of the reason for Sullivan's non-selection: Haley 'did not select Sullivan for promotion to a GS-14 position because of concerns regarding Sullivan's case management abilities at the 13 level,' Plaintiff 'was only able to meet the case management requirements of a GS-13 Appeals Officer,' and Haley 'believed that Sullivan would struggle in the GS-14 position, where the cases are more complex and case management becomes more critical.'"  Pl.'s Br. at 23.  These are not different, shifting reasons as Plaintiff contends, but all are consistent with Defendants' proffered reason for the non-selection of Plaintiff, namely, the concern with Plaintiff's case management abilities at the GS-13 level.  *See Nichols*, 138 F.3d at 567-68 ("While a reasonable juror certainly may infer discrimination when an employer offers inconsistent explanations for the challenged employment action, . . . Nichols cannot point to such a discrepancy in this case.  Indeed, at every stage of the proceeding, Supervalu has maintained

---

3. This Court notes that Plaintiff does not provide a citation as to where this Court may find Haley's EEO affidavit, and it does not appear from the index of Plaintiff's appendix to his response that Plaintiff included this affidavit for this Court's review.  If Plaintiff does not refer to evidence in the record, it is not properly before the Court to consider in determining whether the motion for summary judgment should be granted.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]"  *Skotak*, 953 F.2d at 915 n.7.  Nevertheless, this omission is of no effect since the cited excerpt is not a reason for the non-selection of Plaintiff, but merely what that reason was allegedly based on.  Even if Haley based his decision not to promote Plaintiff solely on the interview panel's recommendation, this is not inconsistent with Defendant's proffered reason that Haley did not promote Plaintiff because of concerns regarding Plaintiff's case management abilities, especially given the fact that, as Plaintiff states in his brief, one of the interviewers, Cody, expressed concern regarding Plaintiff's case management abilities.  *See* Pl.'s Br. at 10.  Therefore, this cannot be a different, shifting reason as Plaintiff alleges.

that Sirchia was selected for the promotion because he was the most qualified candidate.  This assessment was made on the basis of several factors, including Sirchia's performance on the supervisor's test.  While Jordan may have had difficulty in identifying, in the abstract, which factor he considered most important to his decision, we do not detect in this difficulty any attempt to shield improprieties in the selection process.  The promotion decision is a dynamic one, and the relative importance placed on various selection criteria cannot be expected to remain fixed and unyielding.  We conclude that Nichols' 'shifting explanations' argument falls short of proving Supervalu's proffered explanation was pretext.").

### 3. False Reason Showing Pretext

Plaintiff also contends that Defendants' proffered reason is false for the following reasons: (a) Plaintiff's case management was fully successful; (b) Haley did not know of and was not concerned with Plaintiff's case management rating; (c) the evidence contradicts Haley's "belief" as to Plaintiff's potential; and (d) the reasons given for the promotion of the selectees over Plaintiff are insufficient.  Pl.'s Br. at 23-28.

### a. Fully Successful Case Management

Plaintiff points out that a rating of 3 in case management by definition means that Plaintiff was "fully successful" in case management.  *Id*. at 24.  Plaintiff contends that he was never disciplined by his direct manager for having a 3 rating in case management.  *Id*.  Plaintiff also asserts that pursuant to the Union Agreement between the IRS and the National Treasury Employees which applies to the promotion process, a rating of 3 does not bar promotion, but only a rating of 1, unsuccessful, and 2, minimally successful, can bar consideration for a promotion.  *Id*. at 24-25.

As previously mentioned, whether direct or circumstantial, "the evidence offered to counter

the employer's proffered reasons must be substantial." *Nichols*, 138 F.3d at 566. Plaintiff has not

provided such substantial evidence here. The issue under consideration is Plaintiff's non-selection

for a promotion, not Plaintiff's termination. Even if Plaintiff had never been disciplined for having

a 3 rating in case management or has been consistently fully successful in managing the GS-13 level

work, this does not counter Defendants' proffered reason that Plaintiff was not selected for a

promotion to the GS-14 level because Plaintiff met and did not exceed in case management at the

GS-13 level. Plaintiff was not barred from consideration for the promotion at issue, but was one of

the top five candidates. *See* Pl.'s Br. at 5.

### b. No Knowledge of Case Management Rating

Plaintiff also contends that the Defendants' proffered reason is false because Haley did not

know of and was not concerned with Plaintiff's case management rating. *Id*. at 25-27. Plaintiff

argues that Haley testified at his deposition that he did not have direct knowledge that Plaintiff had

any case management problems. Pl.'s Br. at 25 (citing Pl.'s App. at 49). Furthermore, Plaintiff

points out that Haley's unamended declaration states that he signed three of Plaintiff's appraisals

from May 2001-May 2004, when he only signed two of them. Pl.'s Br. at 25 (citing Defs.' App. at

8-38). Furthermore, Plaintiff points out that Haley testified at his deposition that he did not

necessarily read Plaintiff's appraisals before signing them. *Id*. (citing Pl.'s App. at 48).

Although Haley testified that he did not have direct knowledge of Plaintiff's case

management problems, Plaintiff's counsel narrowly defined "direct knowledge" as "meaning by

your own observation." Pl.'s App. at 49. Haley, a senior official, need not have observed Plaintiff

personally in order for him to have knowledge of Plaintiff's case management abilities. Therefore,

this does not counter Defendants' proffered reason for Plaintiff's non-promotion.[4]  With regard to Haley's testimony regarding reading the appraisals, Haley testified, "Sometimes I read them; sometimes I didn't.  Depended on my schedule and my time and my reliance on the manager and so forth."  Pl.'s App. at 48.  This is not inconsistent with Haley's declaration that he was aware that Plaintiff was meeting the case management standard.  *See* Haley Am. Decl. at ¶ 12 ("I have known Dwayne Sullivan since 1983, and I am familiar with his performance as a GS-13 Appeals Officer. Specifically, I was the reviewing official who reviewed and signed Mr. Sullivan's annual appraisals for the periods May 1, 2001-April 30, 2002, and May 1, 2003-April 30, 2004.  Therefore, I was aware, at the time of the selections . . . that Mr. Sullivan was just 'meeting' the standards for case management.").  Additionally, the fact that Haley's unamended declaration states that he signed three of Plaintiff's appraisals when in actuality, he only signed two of them also does not counter Haley's declaration that he was aware of Plaintiff's case management abilities.[5]  In sum, this Court does not find that Plaintiff offered the substantial evidence necessary to counter Defendants' proffered reason.  *See Nichols*, 138 F.3d at 566.

### c. Evidence Contradicting Haley's "Belief"

Plaintiff also contends that Defendants' proffered reason is false because the evidence contradicts Haley's "belief" as to Plaintiff's potential.  Pl.'s Br. at 27-28.  Defendants' contend that Haley believed Plaintiff would struggle in the GS-14 position because Plaintiff was just meeting the

---

4. Furthermore, Haley testified at his deposition that he had personal knowledge of Plaintiff's case management issues because Plaintiff's manager approached Haley in order to effectuate the transfer of work away from Plaintiff.  *See* Pl.'s App. at 49.

5. On April 9, 2007, Defendants filed an amended declaration of Haley correcting this error.  *See* Doc. 37.

standards for case management at the GS-13 level.  Defs.' Br. at 12; Haley Am. Decl. at ¶¶ 12, 18.

In countering this proffered reason, Plaintiff states, "Although Haley admits that promotion

procedures require consideration of the promotion package including the performance review and

the promotional panel's ranking, he never considered anything and allegedly merely relied on the

interviewers' recommendation."  Pl.'s Br. at 27.  Plaintiff does not point to any summary judgment

evidence in the record in support of this assertion.  The nonmovant must "by [his] own affidavits,

or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'"  *See Celotex Corp.*, 477 U.S. at 324 (citing FED. R.

CIV. P. 56).  The nonmovant's "burden is not satisfied with ' . . . unsubstantiated assertions . . . ."

FED. R. CIV. P. 56(e).  If Plaintiff does not refer to evidence in the record, it is not properly before

the Court to consider in determining whether the motion for summary judgment should be granted.

*Skotak*, 953 F.2d at 915; *Kline*, 845 F.2d at 1307.  "Rule 56 does not impose upon the district court

a duty to sift through the record in search of evidence to support a party's opposition to summary

judgment[.]" *Skotak*, 953 F.2d at 915 n.7.  Nevertheless, even if Plaintiff had cited to specific facts

in the record supporting his argument, this Court fails to see how Haley's reliance on the

interviewers' recommendation contradicts Haley's belief regarding Plaintiff's potential at the GS-14

level, especially given the fact that, as Plaintiff states in his brief, one of the interviewers, Cody,

expressed concern regarding Plaintiff's case management abilities, and Plaintiff does not explain

to this Court how it can construe it in such a manner.  *See* Pl.'s Br. at 10.

Plaintiff also contends that "[o]ther facts taken as a whole also cast doubt on Haley's belief.

The discussion regarding pretext above and below include such facts.  In addition, Haley's failure

to ever select an African-Amercan for promotion to 14, his promotion of all other persons ranking

18

first on the Best Qualified List except Sullivan, his promotion of only white persons to the several GS-14 Appeal Officer positions in the announcement at issue, and the numerous violations of the merit promotion procedures and union contract, is further evidence of discrimination that contradicts 'belief.'" Pl.'s Br. at 27.   Again, Plaintiff does not cite to summary judgment evidence in support of his allegations that Haley never selected an African American for promotion to GS-14, Haley promoted all other persons ranking first on the Best Qualified List except for Plaintiff, Haley promoted only white persons to the several GS-14 Appeal Officer positions in the announcement at issue, and Haley violated the merit promotion procedures and union contract numerous times. *See id*.  Furthermore, Plaintiff does not explain how these alleged facts show evidence of pretext in Plaintiff's non-selection.  This Court also does not see which discussion regarding pretext "above and below" in Plaintiff's brief "cast doubt on Haley's belief," and Plaintiff does not explain how these discussions support Plaintiff's position. *See id*.

As previously mentioned, "the evidence offered to counter the employer's proffered reasons must be substantial." *Nichols*, 138 F.3d at 566.  Furthermore, Plaintiff "at all times retains the burden of persuading the fact finder that impermissible discrimination motivated" the non-promotion. *Jackson*, 734 F. Supp. at 268 (citing *Burns,* 890 F.2d at 750).  Given the above, this Court does not find that Plaintiff demonstrated that the evidence contradicts Haley's belief regarding Plaintiff's potential.

### d. Alleged Superiority of Selectees

Plaintiff also contends that Defendants' proffered reason is false because the reasons given for the promotion of the selectees over Plaintiff are insufficient.  Pl.'s Br. at 28-30.  As previously mentioned, in order to satisfy their burden, Defendants only need to produce evidence regarding why

Plaintiff was rejected or why the selectees were preferred, not both.  *See Burdine*, 450 U.S. at 254-56

("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by

producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate,

nondiscriminatory reason. . . . The Court of Appeals has misconstrued the nature of the burden that

*McDonnell Douglas* and its progeny place on the defendant. . . . We stated in *Sweeney* that the

employer's burden is satisfied if he simply explains what he has done or produc[es] evidence of

legitimate nondiscriminatory reasons. . . . It is plain that the Court of Appeals required much more:

it placed on the defendant the burden of persuading the court that it had convincing, objective

reasons for preferring the chosen applicant above the plaintiff.") (internal citation and quotation

omitted).  Since Defendants satisfied their burden by sufficiently articulating a non-discriminatory

reason for Plaintiff's non-selection, this Court does not address the alleged insufficiency of

Defendants' given reasons for the promotion of the selectees.

## IV. CONCLUSION

For the reasons stated above, Defendants' summary judgement motion is granted with

respect to all of Plaintiff's Title VII and ADEA claims against Defendants.

So ordered.  June 20, 2007.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE